# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**AMANDA A. ANDREWS,**                         CASE NO. 3:22 CV 101

    Plaintiff,

    v.                                       JUDGE JAMES R. KNEPP II

**SECURUS TECHNOLOGIES, INC., et al.,**

                                            **MEMORANDUM OPINION AND**
    Defendants.                        **ORDER**

## INTRODUCTION

This case involves allegations that Defendants Securus Technologies, Inc., Wyandot County Sheriff Todd D. Frey, and Bridget A. Andrews improperly distributed phone calls recorded while Plaintiff Amanda A. Andrews was an inmate at the Wyandot County Jail. Jurisdiction is proper under 28 U.S.C. § 1331. Currently pending before the Court are Defendants' motions to dismiss Plaintiff's Amended Complaint (Docs. 14, 15, 21), as well as a motion to strike that pleading (Doc. 14, at 1-2).

For the following reasons, the Court denies the motion to strike, but grants all three motions to dismiss.

## BACKGROUND

Original Complaint

On January 18, 2022, Plaintiff filed a Complaint against Securus, the Wyandot County Sheriff's Department, the Wyandot County Commissioners, and Bridget Andrews. (Doc. 1). Therein, Plaintiff brought civil rights claims under 42 U.S.C. § 1983 based on the alleged release of phone calls recorded while Plaintiff was incarcerated. *Id.* Plaintiff alleged, *inter alia*, Securus

provided the phone service for the Wyandot County jail while Plaintiff was confined there. *Id.* at ¶ 2. She asserted that while incarcerated she "was assured that while her calls were being recorded for use by law enforcement, they would not be disclosed to third parties not associated with law enforcement." *Id.* at ¶ 9. Upon release, "Plaintiff learned that most if not all of her calls had been distributed to a third party, specifically Bridget R. Andrews, the ex-wife of Plaintiff', who had "used those calls in connection with a custody battle" and "distributed them to countless friends and family of Plaintiff." *Id.* at ¶ 10.

On January 31, 2022, the County Defendants (Commissioners and Sheriff's Office) moved to dismiss, arguing Plaintiff had not pled facts supporting a plausible constitutional violation. (Doc. 5). Plaintiff sought and obtained three extensions of time in which to respond to this motion. *See* Docs. 6, 8, 10 and non-document entries dated February 14, 2022, February 28, 2022, and March 15, 2022. In each, she simply requested additional time "to respond to Defendants' motion to dismiss." (Docs. 6, 8, 10).

On March 16, 2022, Securus also moved to dismiss, arguing that Plaintiff had not adequately pled it was a state actor for purposes of § 1983 liability, and – similar to the County Defendants' argument – that Plaintiff had failed to plead a constitutional violation. (Doc. 12).

First Amended Complaint

On March 17, 2022, Plaintiff filed a First Amended Complaint, citing Federal Rule of Civil Procedure 15(b). (Doc. 13). She eliminated her constitutional claims, and instead asserted a claim under Title III, 18 U.S.C. § 2520, against Securus, Wyandot County Sheriff Todd D. Frey, and Bridget Andrews. She again alleged Securus provided the phone service for the Wyandot County Jail, and – through a contract with the Sheriff – recorded all inmate phone calls. *Id.* at ¶¶ 3, 12. Plaintiff was an inmate in the Wyandot County Jail in 2020, and while there "was assured that

2

while her calls were being recorded for use by law enforcement, they would not be disclosed to third parties not associated with law enforcement" and "[a]t no point was [she] informed that her calls could be released to the public." *Id.* at ¶¶ 13-15. Following her release in August 2020, Plaintiff "discovered that most if not all her calls had been distributed by the Sheriff and Securus to Bridget R. Andrews or other unknown third parties". *Id.* at ¶ 16. Bridget Andrews (1) used the calls in connection with a pending custody case in Ottawa County Domestic Relations Court, and (2) "distributed the calls to countless friends and family of Plaintiff." *Id.* Plaintiff alleges Defendants "intended the disclosures to damage, threaten, embarrass and humiliate" her. *Id.* at ¶ 20.

The County Defendants move to strike Plaintiff's Amended Complaint (Doc. 14, at 1-2), and all Defendants move separately to dismiss the Amended Complaint (Docs. 14, 15, 21). These motions are all fully briefed and ripe for decision.[1]

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

---

1. Plaintiff sought and received multiple extensions of time to respond to Bridget Andrews's Motion to Dismiss, but never filed an opposition.

(2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

## DISCUSSION

Motion to Strike

At the outset, the Court addresses the County Defendants' argument that Plaintiff's First Amended Complaint was filed out of rule and therefore must be stricken. *See* Doc. 14, at 1-2. They argue the filing violates Federal Civil Rule 15(a) because Plaintiff did not seek the Court's leave or obtain consent to file it. Plaintiff admits she filed the Amended Complaint outside the 21-day timeframe in Rule 15, but notes she sought and received extensions of time in which to respond to the motion to dismiss, and because the Amended Complaint was that response, it should not be stricken.

As to pleading amendments before trial, Rule 15 provides

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

    (A) 21 days after serving it, or

    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Another judge of this Court has confronted – and rejected – an argument similar to that made by Plaintiff here. *See Rettig v. Henry Cty. Bd. of Comm'rs*, 2020 WL 2839421, at *3 (N.D. Ohio) ("I agree with my colleagues who have found that an order extending the amount of time a party has to respond to a motion to dismiss does not affect the time permitted by Rule 15(a)(1) to amend a complaint as a matter of course.").

The Court agrees with the County Defendants that the First Amended Complaint was not properly filed pursuant Rule 15(a). Nevertheless, given the fully briefed and pending motions to dismiss that pleading, the Court retroactively grants leave to file the First Amended Complaint in order to address the substantive merits of the new claim Plaintiff seeks to bring.[2]

Motions to Dismiss

Defendants present several arguments in favor of dismissal. Sheriff Frey contends Plaintiff has not adequately pled the interception of the calls was illegal, that any disclosure was impermissible under 18 U.S.C. § 2517, or that any violation was willful. Securus argues Plaintiff has not adequately pled any violation was willful, and has not pled the interception was illegal under 18 U.S.C. § 2511 as required to state a claim under § 2520(a). Finally, Bridget Andrews contends that as a private individual, she cannot be liable under § 2520(g), and more basically, that there is no statutory violation at issue here because the recordings at issue fall outside the purview of the statutory language. For the reasons discussed below, the Court dismisses the Amended Complaint.

---

2. As such, the previously-filed motions to dismiss the original complaint (Docs. 5, 12) are denied as moot.

*Title III Generally*

Plaintiff seeks to hold Defendants liable for alleged violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, otherwise known as the "Federal Wiretap Act". *See* 18 U.S.C. § 2510, et seq. "Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified serious crimes and receive prior judicial approval, an approval that may not be given except upon compliance with stringent conditions." *Gelbard v. United States*, 408 U.S. 41, 46 (1972). Title III carries criminal penalties for violations. *See id.*; 18 U.S.C. § 2511(4). It also has a civil remedy provision. *See* 18 U.S.C. § 2520.

*Plaintiff Does Not Allege a Statutory Violation*

Defendant Bridget Andrews argues the facts alleged in the Amended Complaint simply do not describe an "interception" within the definitional meaning provided in Title III, and as such, there can be no liability (for her, or any co-Defendant). *See* Doc. 21, at 4 ("Plaintiff's allegations do not describe a violation of the Act at all, by anyone."); Doc. 21, at 6 ("The various instances of recordation of Plaintiff's phone calls were not even 'interceptions,' much less unlawful interceptions. Disclosure of the recordings did not violate the Act. Plaintiff has no claim against anyone.").[3]

Title III provides a civil right of action:

> **(a) In general.**--Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or

---

3. Sheriff Frey does not expressly make this argument, but alludes to it. *See* Doc. 14, at 4 ("This is not to say, however, that the County Defendants believe the County has engaged in the 'interception' of a communication as that term is defined in 18 U.S.C. § 2510(4) in the first place. Should this case progress past the Rule 12 stage, Sheriff Frey reserves the right to make additional arguments as to why there has been no violation of the statute by employees of the Sheriff's Office.").

> entity, other than the United States, which engaged in that violation such relief as may be appropriate.
>
> * * *
>
> **(g) Improper disclosure is violation.**--Any willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by section 2517 is a violation of this chapter for purposes of section 2520(a).

18 U.S.C. § 2520(a), (g). To survive dismissal, Plaintiff must therefore allege facts to show her communications were "intercepted, disclosed, or intentionally used *in violation of*" Title III. "There is general consensus among the courts that a person or entity is civilly liable under § 2520 only if his (or its) conduct is illegal, i.e., criminal, under § 2511(1)." *B & G Towing, LLC v. City of Detroit*, 828 F. App'x 263, 266 (6th Cir. 2020) (quoting Clifford S. Fishman & Anne T. McKenna, *Wiretapping and Eavesdropping* § 3:36); *see also Seitz v. City of Elgin*, 719 F.3d 654, 657 (7th Cir. 2013) ("Section 2520 itself creates no substantive rights. Rather, it simply provides a cause of action to vindicate rights identified in other portions of [Title III.]"). That is, to perhaps restate the obvious, a necessary precursor to seeking a civil remedy is a violation of Title III.

The statute defines an "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). However, § 2510(5)(a)(ii) defines the phrase "electronic, mechanical, or other device" to exclude "equipment . . . being used . . . by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii).

Here, Plaintiff asserts a violation by way of *disclosure* rather than the recording itself. She does not argue the recording itself was unlawful. *See* Doc. 13, at ¶ 10. But the statute creates liability for disclosure only for information that was "intercepted" within the meaning of the Act. Section 2511(1)(c) provides for situations where an unlawful recording is disclosed:

7

> Except as otherwise specifically provided in this chapter any person who - - intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(c) (emphasis added). And Section 2517 addresses the disclosure or use of lawfully intercepted recordings. 18 U.S.C. § 2517; *see also* 18 U.S.C. § 2520(g).

However, before the Court can reach these provisions, it must address the preliminary question of whether the at-issue recordings are covered by the statute. Other Circuit Courts have concluded routine prison phone recording falls within the exclusion in § 2510(5)(a)(ii) and are thus entirely outside the coverage of the statute. *See, e.g.*, *United States v. Lewis*, 406 F.3d 11, 16 (1st Cir. 2005). In *Lewis*, the First Circuit, applying the statutory definitions and exclusions, explained:

> Recordings authorized by § 2510(5)(a)(ii) are "not the product of an 'interception,' consensual or otherwise, governed by Title III; therefore, they are not subject to whatever limitations Title III places upon the disclosure of information that does result from a covered interception." *Smith*, 251 F.3d at 1049.
>
> That a recording authorized by § 2510(5)(a)(ii) falls outside of Title III is apparent from the plain language of the statute. Section 2510, Title III's definition section, excludes from the meaning of "intercept" the acquisition of the contents of a communication via a device used by an investigative or law enforcement officer in the ordinary course of his duties. 18 U.S.C. §§ 2510(4), (5)(a)(ii). Because Pyne's recording falls within that definition, he did not intercept the call. Because he did not intercept the call, Title III's restrictions on the use of intercepted communications are inapposite. *See* 18 U.S.C. § 2515 (prohibiting "intercepted" communications from being "received into evidence in any trial"). Pyne's disclosure to Brooks and Cummings was therefore not unlawful.

*United States v. Lewis*, 406 F.3d 11, 19–20 (1st Cir. 2005) (footnote omitted); *see also Smith v. U.S. Dep't of Just.*, 251 F.3d 1047, 1049 (D.C. Cir. 2001) ("[T]he recordings he seeks were not the product of an 'interception,' consensual or otherwise, governed by Title III; therefore, they are not subject to whatever limitations Title III places upon the disclosure of information that does result from a covered interception.").

8

In *United States v. Paul*, the Sixth Circuit stated Title III "did apply" to prison wiretapping, but that "the monitoring [at issue] took place within the ordinary course of the Correctional Officers' duties and was thus permissible under 18 U.S.C. § 2510(5)(a)" where prisoners had notice of the monitoring and recording was a matter of policy. 614 F.2d 115, 117 (6th Cir. 1980). This case did not directly confront the argument that § 2510(5)(a)(ii) exempts such calls from the coverage of Title III, but rather simply addressed the statutory provision as making the interception not unlawful.

Later, in *Adams v. City of Battle Creek*, the Sixth Circuit described this provision as "an exception for law enforcement" and making such recordings "exempt from the statute", further explaining:

> Congress most likely carved out an exception for law enforcement officials to make clear that the routine and almost universal recording of phone lines by police departments and prisons, as well as other law enforcement institutions, is exempt from the statute. *See First v. Stark Cnty. Bd. of Comm'rs,* No. 99–3547, 2000 WL 1478389 (6th Cir. Oct.4, 2000). Such a system routinely and indiscriminately records all phone activity in and out of the police department. This practice is well known in the industry and in the general public, and the courts have ruled that even prisoners are entitled to some form of notice that such conversations may be monitored or recorded. *United States v. Paul*, 614 F.2d 115 (6th Cir. 1980); *see also, e.g., United States v. Van Poyck,* 77 F.3d 285 (9th Cir.1996) (detention center); *United States v. Daniels,* 902 F.2d 1238, 1245 (7th Cir.1990); *United States v. Amen,* 831 F.2d 373, 378 (2d Cir.1987); *Campiti v. Walonis,* 611 F.2d 387 (1st Cir.1979) (monitoring of specific inmate call, without regulation or notice, and not routinely done, violates statute).

250 F.3d 980, 984–85 (6th Cir. 2001). *Cf. First v. Stark Cty. Bd. of Comm'rs*, 234 F.3d 1268 (6th Cir. 2000) (table) ("If the recording equipment is used for a legitimate business purpose, it does not qualify as an electronic, mechanical, or other device under the Act.") (addressing § 2510(5)(a)(i), the other definition exception).

Here, the Amended Complaint specifically alleges that all inmate telephone calls from the Wyandot County Jail were recorded by Securus through a contract with the Sheriff and that

9

Plaintiff was informed "her calls were being recorded for use by law enforcement." (Doc. 13, at ¶¶ 13-14). At this stage, the Court draws all reasonable inferences in favor of Plaintiff, but the Court finds there is no reasonable inference to draw except that these recordings were made in the ordinary course of law enforcement duties. Put differently, based on the allegations of the Amended Complaint, to infer anything but that these recordings were made in the ordinary course of law enforcement duties is not reasonable. *See Adams*, 250 F.3d 984-85; *see also Amati v. City of Woodstock*, 176 F.3d 952, 955–56 (7th Cir. 1999) ("To record all calls to and from a police department is, for the reasons explained earlier, a routine police practice. If "ordinary course" of law enforcement includes anything, it includes that. . . . The sparsity of case law on the question suggests not that the principle is dubious but that it is too obvious to have incited many challenges."). And, again, notably, Plaintiff has not filed any response to this argument.

Applying the statutory definitions, the referenced recordings are therefore made by "equipment . . . being used . . . by an investigative or law enforcement officer in the ordinary course of his duties", 18 U.S.C. § 2510(5)(a)(ii), which is excluded from the definition of "electronic, mechanical, or other device", which means they are not "intercepted" within the meaning of 18 U.S.C. § 2510(4).

Because the referenced recordings are not "interceptions" and are thus "exempt from the statute", *Adams*, 250 F.3d at 984; any asserted disclosure thereof also falls outside of the statute's prohibitions. *See Lewis*, 406 F.3d at 20 ("Because he did not intercept the call, Title III's restrictions on the use of intercepted communications are inapposite."); *Smith*, 251 F.3d at 1049 ("[T]he recordings he seeks were not the product of an 'interception,' consensual or otherwise, governed by Title III; therefore, they are not subject to whatever limitations Title III places upon the disclosure of information that does result from a covered interception."). And because Plaintiff

has therefore not plausibly alleged a violation of Title III, the Amended Complaint must be dismissed.

Although only Bridget Andrews moved to dismiss based on this argument (Doc. 21), and Sheriff Frey only alluded to it (Doc. 14, at 4), the Court concludes that the success of this argument necessarily means all Defendants are entitled to dismissal. Plaintiff had an adequate opportunity to respond to this basis for dismissal – which asserted: "Plaintiff's allegations do not describe a violation of the Act at all, by anyone." (Doc. 21). Indeed, Plaintiff sought and obtained two extensions of time in which to respond to Bridget Andrews's motion containing this argument, but ultimately never filed any opposition. *See Quinn v. Shirey*, 293 F.3d 315, 325, n.4 (6th Cir. 2002) (finding permissible dismissal as to all defendants where argument made by one defendant applied to the other and plaintiff had an adequate opportunity to respond to the basis for dismissal).

*The Amended Complaint Does Not Adequately Plead a Violation of § 2520(g)*

Although the preceding section would dispose of this case in its entirety, thus ending the inquiry, even if the Court were to find the recordings were "interceptions" within the meaning of Title III, the Amended Complaint still fails to state a claim upon which relief can be granted. This is so because it does not plausibly allege facts to support the "willfulness" element of a violation based on 18 U.S.C. § 2520(g).[4]

As noted, Plaintiff does not take issue with the recording of the calls, but only with the disclosure of those recordings: "Defendants' disclosure of the recordings of Plaintiff's phone calls

---

4. All three Defendants move for dismissal on this basis. *See* Docs. 15, 20, 21. Bridget Andrews also argues she simply cannot be held liable under the cited statute, 18 U.S.C. § 2520(g), because that provision only applies to "disclosure or use *by an investigative or law enforcement officer or governmental entity*". (Doc. 21, at 3-4). Plaintiff has not responded to this argument and the Court finds it well-taken. Moreover, even assuming *arguendo* Bridget Andrews could be held liable under this statute, dismissal is still required as discussed below.

11

violates Section 2517 of Title III". (Doc. 13, at ¶ 19). She cites 18 U.S.C. § 2520(g) as the legal basis for her claim. *Id.* at ¶ 18.

Not every disclosure of an interception violates the statute. Section 2517 authorizes certain disclosures and uses of communications permissibly intercepted within the meaning of Title III. 18 U.S.C. § 2517 "Authorization for disclosure and use of intercepted wire, oral, or electronic communications."); *see also B & G Towing*, 828 F. App'x at 267 ("Unlike §§ 2511(1)(c) and (d), which concern only the use or disclosure of unlawful intercepts, § 2517 permits certain actors to use or disclose information they obtained 'by any means authorized by this chapter.'") (citing 18 U.S.C. §§ 2517(1)–(3), (6)–(8)). These provisions permit disclosure from one law enforcement officer to another "to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure" or the use of such information by a law enforcement officer "to the extent such use is appropriate to the proper performance of his official duties." 18 U.S.C. § 2517(1)-(2). It further permits disclosure "while under oath or affirmation in any proceeding held under the authority of the United States or any State or political subdivision thereof." 18 U.S.C. § 2517(3). And again, as noted above, the civil remedy provision provides that willful disclosure beyond those authorizations is a violation: **"**[a]ny willful disclosure or use by an investigative or law enforcement officer or governmental entity of information *beyond the extent permitted by section 2517* is a violation of this chapter for purposes of section 2520(a)." 18 U.S.C. § 2520(g) (emphasis added).

The Sixth Circuit recently analyzed the willfulness requirement in Section 2517 in the pleading context:

> The term "willful" first appeared in the pre-1986 version of Title III. Back then, "18 U.S.C. § 2511 made it a crime to 'willfully intercept[ ] ... any wire or oral communication.' " *Farroni v. Farroni*, 862 F.2d 109, 110 (6th Cir. 1988) (alterations in original). We defined "willfully" as "knowingly or recklessly

12

> > disregard[ing] a known legal duty." *Id.* at 112. In 1986, Congress "substitut[ed] 'intentionally' for 'willfully' " in § 2511. *Id.* at 110 n.1. But in 2001, Congress brought back "willful" in § 2520(g). USA PATRIOT ACT, Pub. L. No. 107-56, § 223, 115 Stat. 272, 293 (2001). We have no reason to believe that Congress's reintroduction of the term "willful" meant to convey a meaning different from its prior sense. *See* Fishman & McKenna, *Wiretapping and Eavesdropping* § 2:111 ("[P]re-[1986] case law applying the term 'willful' to Title III is relevant in helping courts assess how it should be applied to the [2001 amendments]."). So Fiore must plead sufficient facts to state a plausible claim that the City "knowingly or recklessly disregard[ed] a known legal duty" when it used the wiretap information. *Farroni*, 862 F.2d at 112.
> >
> > Elsewhere, we have examined what a plaintiff must include in the complaint to survive a Rule 12(b)(6) motion on a claim that has "willfulness" as an element: she "must do more than make the conclusory assertion that a defendant acted willfully." *Crugher v. Prelesnik*, 761 F.3d 610, 617 (6th Cir. 2014) (quoting *Katoula v. Detroit Ent., LLC*, 557 F. App'x 496, 498 (6th Cir. 2014)). In *Katoula*, we noted that "[t]he Supreme Court specifically addressed state-of-mind pleading in *Iqbal*, and explained that Rule 9(b)—which allows a plaintiff to plead '[m]alice, intent, knowledge, and other conditions of a person's mind ... generally'—does not give a plaintiff license to 'plead the bare elements of his cause of action ... and expect his complaint to survive a motion to dismiss.' " *Katoula*, 557 F. App'x at 498 (second, third, and fourth alterations in original) (quoting *Iqbal*, 556 U.S. at 686–87, 129 S.Ct. 1937). The complaint in *Katoula* failed to plead "willfulness" because it "contain[ed] no facts that [would] allow a court to infer that [the defendant] knew or acted with reckless disregard of the fact that it was interfering with Katoula's rights." *Id.* Similarly, the complaint in *Crugher* failed because it was "devoid of any allegations supporting a finding of willfulness." *Crugher*, 761 F.3d at 617.
>
> *B & G Towing*, 828 F. App'x at 267–68. The Sixth Circuit then found the complaint in *B & G*
>
> *Towing* did not meet the standard:
>
> > Like the complaints in *Crugher* and *Katoula*, Fiore's complaint offers only a conclusory statement that "[t]he City of Detroit continues to use and willfully disclose the Wiretap Affidavit and uses the wiretap information to support its actions against Plaintiffs." It contains no facts that would allow a court to infer that the City "knowingly or recklessly disregard[ed] a known legal duty" when it used the wiretap information. *Farroni*, 862 F.2d at 112. As a result, Fiore has not met her burden of pleading that the City acted willfully. *See Crugher*, 761 F.3d at 617; *Katoula*, 557 F. App'x at 498; *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (stating that a "[t]hreadbare recital[ ] of the elements of a cause of action," without factual support, is insufficient to survive a motion to dismiss under Rule 12(b)(6)). Fiore's claim under § 2517 and § 2520(g) therefore fails. As we have now explained in a variety of contexts, "although conditions of a person's mind may be alleged

13

> generally, 'the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Crugher*, 761 F.3d at 617 (quoting *Katoula*, 557 F. App'x at 498); *see also Long*, 804 F.3d at 797–98 (dismissing a claim under the Stored Communications Act for failure to adequately plead state of mind).

*Id.* at 268.

In response to Defendants' arguments, Plaintiff argues that this case involves different facts, the "allegations are much more specific" (Doc. 18, at 3), and *B & G Towing* "is simply not dispositive" (Doc. 17, at 5). It is certainly true that this case involves different factual circumstances, but the Court finds the *B & G Towing* analysis directly on point as to the sufficiency of the state of mind pleading under this statute.

The Amended Complaint in this case only provides conclusory allegations:

> 16. In August 2020, following her release from the jail, Plaintiff discovered that most if not all of her calls had been distributed by the Sheriff and Securus to Bridget R. Andrews and or other unknown parties. . . . Defendant Bridget Andrews also distributed the calls to countless friends and family of Plaintiff.
> * * *
> 18. Further, § 2520(g) states: "any willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by § 2517 is a violation of this chapter for purposes of section 2520(a)."
>
> 19. Defendants' disclosure of the recordings of Plaintiff's phone calls violates Section 2517 of Title III and has caused Plaintiff serious mental and emotional harm. Plaintiff's damages include general damages, lost profits, lost earning capacity and reputation damages.
>
> 20. Defendants intended the disclosures to damage, threaten, embarrass and humiliate the Plaintiff.

(Doc. 13, at ¶ 16). An allegation Plaintiff "discovered that the calls had been distributed" is not sufficient for the Court to infer any Defendant "knew or acted with reckless disregard of the fact that it was interfering with [Plaintiff's] rights." *Katoula v. Detroit Ent., LLC*, 557 F. App'x 496, 498 (6th Cir. 2014). Other than stating that § 2517 was violated, the Amended Complaint contains no facts from which the Court can infer any such a violation occurred; that is, because it contains

14

no facts about how the disclosure occurred, it does not contain facts to support the inference that the disclosure was not a statutorily-permitted disclosure. Plaintiff's argument that "[t]hese allegations are sufficient to state a claim in that they cite the statute, to include the willful requirement, and then accuse the Defendants of violating the statute" (Doc. 18, at 3) is unconvincing. This is precisely the "unadorned, the-defendant-unlawfully-harmed-me accusation" that *Twombly* says is insufficient. 550 U.S. at 555.

Plaintiff's Amended Complaint contains no more than a "[t]hreadbare recital[ ] of the elements of a cause of action". *Iqbal*, 556 U.S. at 678. It does not contain factual allegations about any Defendant's mental statute to support a plausible inference of willfulness where it lacks any facts about how the disclosure occurred. As such, the Amended Complaint fails to state a claim upon which relief may be granted and must be dismissed.

Leave to Amend

In opposition to Securus's Motion to Dismiss regarding inadequate pleading of the willfulness element, Plaintiff stated: "Should this Court determine that the pleading is flawed on this single issue, the Plaintiff would seek leave to Amend her Complaint to clarify this issue." (Doc. 18, at 3). She did not file a motion to amend, or set forth what additional facts she would assert in a further attempt to amend.

Federal Rule of Civil Procedure 15(a) states a court should grant leave to amend when justice so requires. *La. Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010). However, a "party seeking leave to amend must file a motion stating its grounds for amending the complaint with particularity." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 647 (N.D. Ohio 2014) (citing *Evans v. Pearson Enter.*, 434 F.3d 839, 853 (6th Cir. 2006)). "A bare request in an opposition to a motion to dismiss—without any indication of the particular grounds

on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Employees' Ret. Sys.*, 622 F.3d at 486; *see also Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000) ("Plaintiffs [are] not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies."). Therefore, Plaintiff's "bare request" for leave to amend is denied.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Sheriff Todd Frey's Motion to Dismiss (Doc. 14), and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Securus Technologies Inc.'s Motion to Dismiss (Doc. 15), be and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Bridget Andrews's Motion to Dismiss (Doc. 21), be and the same hereby is, GRANTED.

                                                      s/ *James R. Knepp II*
                                                      UNITED STATES DISTRICT JUDGE